**23**

REYSNER LAW OFFICE
PIOTR G. REYSNER – 210937
4110 Truxel Rd., Suite A
Sacramento, CA 95834
Ph:  (916) 575-7621
Fax:  (916) 760-7108

Attorney for Plaintiffs
Individually and on behalf of the
General Public of the State of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA/SACRAMENTO DIVISION

| | |
|---|---|
| FAIZ A. JAHANI, individually and on behalf of the General Public of the State of California, KHADUA JAHANI, individually and on behalf of the General Public of the State of California<br><br>      Plaintiffs<br><br>v.<br><br>WASHINGTON MUTUAL BANK now doing business as J.P. MORGAN CHASE BANK N.A., J.P. MORGAN CHASE BANK, N.A. a corporation and as successor in interest to WASHINGTON MUTUAL BANK, CHASE HOME FINANCE LLC, a subsidiary of J.P. MORGAN CHASE BANK, a Limited Liability Corporation and as successor in interest to WASHINGTON MUTUAL BANK and as agent for J.P. MORGAN CHASE BANK, FREDDIE MAC, a corporation and as an agent/successor in interest to J.P. MORGAN CHASE BANK,CHASE HOME FINANCE, AND WASHINGTON MUTUAL and DOES 1 to 50<br><br>      Defendants | Case No.:<br><br>**COMPLAINT FOR**<br>**1)  FRAUDULENT INDUCEMENT TO BREACH CONTRACT;**<br>**2)  VIOLATION OF TILA, 15 U.S.C. § 1601,** *et seq;*<br>**3)  FRAUD AND CONSPIRACY TO COMMIT FRAUD;**<br>**4)  VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2923.5** *et seq.***/REQUEST FOR DECLARATORY RELIEF;**<br>**5)  PREDATORY LENDING/VIOLATION OF TRUTH IN LENDING;**<br>**6)  UNLAWFUL BUSINESS PRACTICES IN VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200.**<br>**7)  FRAUDULENT BUSINESS PRACTICES IN VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200;**<br>**8)  VIOLATION OF THE FAIR CREDIT REPORTING ACT**<br>**9)  DEFAMATION**<br>**10)  FALSE LIGHT**<br>**11)  BREACH OF CONTRACT**<br>**12)DECLARATORY RELIEF/INJUNCTIVE RELIEF**<br>**Location:  United States Federal Court**<br>                **501 I St., Sacramento, CA**<br>**Dept:**      **TBD**<br>**Courtroom:**  **TBD**<br>**Judge:**     **TBD** |

COMPLAINT

-1-

1.  Comes now Plaintiff FAIZ A. JAHANI, individually and on behalf of the General Public of the State of California, KHADUA JAHANI, individually and on behalf of the General Public of the State of California (hereinafter referred to as "Plaintiffs" or "Jahani") for causes of action against all defendants in lending acts (TILA) implementing regulation Z, 12 C. F. R. Section 226, along with state and federal law claims.

## I.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over this matter pursuant to 28 U. S. C. Section 1331 in that this matter involves issues regarding violations of Federal law.  This court further has diversity jurisdiction under 28 U.S.C. Section 1332 in that Plaintiff and at least one defendant reside in different states and the amount in controversy exceeds $75,000.00.

3.  Venue is proper in the United States District Court for the Eastern District of California under 28 U. S. C. Section 1391(b) and (c),

## II.

## PARTIES

4.  At all times relevant herein Plaintiffs were natural persons over the age of 18 and are/were residents of Sacramento County, California. Plaintiffs bring this action both individually and on behalf of the general public of California.  Pursuant to California Code of Civil Procedure section 382, questions of liability herein concern a common or general interest of the general public of the State of California, the plaintiff parties are too numerous to include, and it is impracticable to bring all possible plaintiffs before the court.

5.  Plaintiffs are informed and believe and thereon allege that defendant WASHINGTON MUTUAL BANK, now doing business as, J.P. MORGAN CHASE BANK, N.A. is and at all times relevant herein was, a corporation, association, partnership, joint venture, and/or sole

proprietorship organized and existing under laws of a state not yet ascertained but outside the State of California and/or maintaining offices and doing business in California.

6. Plaintiffs are informed and believe and thereon allege that defendant J.P. MORGAN CHASE BANK, N.A., a corporation acting on its own and as successor in interest to WASHINGTON MUTUAL BANK is and at all times relevant herein was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under laws of a state not yet ascertained but outside the State of California and/or maintaining offices in and doing business in California.  At all times relevant herein, plaintiff is informed and believes and thereon alleges that J.P. MORGAN CHASE BANK, N.A. acted both on its own behalf and as successor in interest to WASHINGTON MUTUAL BANK.

7.. Plaintiffs are informed and believe and thereon allege that defendant CHASE HOME MORTGAGE, LLC., a limited liability corporation acting on its own, as an agent for defendant J.P. MORGAN CHASE BANK, and as successor in interest to WASHINGTON MUTUAL BANK and/or J.P. MORGAN CHASE BANK is and at all times relevant herein was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of a state not yet ascertained but outside the State of California and/or maintaining offices in and doing business in California.  At all times relevant herein, plaintiff is informed and believes and thereon alleges that CHASE HOME MORTGAGE, LLC, acted both on its own behalf and as an agent for defendant J.P. MORGAN CHASE BANK, and as successor in interest to WASHINGTON MUTUAL BANK and/or J.P. MORGAN CHASE BANK.

8.  Plaintiffs are informed and believe and thereon allege that defendant FREDDIE MAC, a Virgiana Corporation, acting on its own, as an agent for defendant J.P. MORGAN CHASE BANK, , as an agent for defendant CHASE HOME MORTGAGE, LLC and as successor in interest to WASHINGTON MUTUAL BANK and/or J.P. MORGAN CHASE BANK and/or

CHASE HOME MORTGAGE, LLC, is and at all times relevant herein was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the state of Virginia and/or maintaining offices in and doing business in California. At all times relevant herein, plaintiff is informed and believes and thereon alleges that FREDDIE MAC, a Virgiana Corporation, acted on its own, as an agent for defendant J.P. MORGAN CHASE BANK, , as an agent for defendant CHASE HOME MORTGAGE, LLC and as successor in interest to WASHINGTON MUTUAL BANK and/or J.P. MORGAN CHASE BANK and/or CHASE HOME MORTGAGE, LLC, (unless stated otherwise, each said defendant shall be referred to collectively as "Defendants")

     9.  Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend the complaint to allege the true names and capacities when ascertained.

     10.  Plaintiffs are informed and believe and thereon allege that, at all relevant times, the Doe defendants were the agents for one or more unnamed third parties and that each of these fictitiously named defendants is liable and indebted to plaintiffs as hereinafter alleged; that plaintiffs' rights against such fictitiously named defendants arise from such liability and indebtedness and that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged; that plaintiffs' injuries as herein alleged were legally caused by their conduct; that each of them, and the named defendants, did agree and conspire together to do the acts herein alleged, authorized and/or ratified said acts, and were the authorized agents, representatives, servants, and employees of the other and in doing the things herein alleged were acting within the course and scope of said agency, representation, and/or employment and in such capacity caused and/or is responsible for and, as are the named defendants, is jointly and severally liable for any damages as herein alleged by plaintiffs.

/ / /

# III.

## GENERAL ALLEGATIONS

11.  Plaintiffs hereby incorporate paragraphs 1 through 10 of this complaint as if fully set forth herein.

12  As a result of the mortgage activities alleged herein defendants, and each of them, were subject to and under a duty to comply with the federal Truth in Lending Act (hereinafter to as "TILA") 15 U.S.C. section 1601, et *seq.* and with the acts corresponding regulations Z. Further, as will be described in more detail below, defendants, and each of them, by and through their actions have violated various California laws of the California Unfair Business Practices Act pursuant to California business and professions code section 17200, et *seq.*, as well as various other state laws.

13.  At all times herein mentioned, defendants did business as wholesale lenders, mortgage brokers, etc. under contract with the other defendants made herein and worked closely with the payment of sales representatives, originated loans that were underwritten by defendants.

14.  Plaintiffs are the owners of real property commonly referred to as 9021 Bramblewood Way, Elk Grove, CA 95758 ("the Property").

15.  Plaintiffs purchased the property on or about June 2001.  The loan is held or serviced by defendants with a current principle loan balance of approximately $360,000.00

16.  In or around December 2008, plaintiffs approached defendants by telephone to indicate that they were having trouble paying their mortgage and would like to discuss a possible loan modification.  At that time, plaintiffs were told by an unnamed representative (at the 800 customer service number) of defendants that they would not work with plaintiffs at all because they were currently not in breach of their loan terms.  Plaintiffs were specifically advised at that time to stop making payments for a period of three months, at which time defendants would consider a loan modification.  Plaintiffs were specifically informed that as long as they were

current on their mortgage payments, that defendants would not consider a loan modification. In or around February 2009, plaintiffs again contacted defendants and submitted all paperwork necessary to initiate the loan modification process.

17. Reasonably relying on the direction of defendants, plaintiffs stopped making their loan payments. Plaintiffs are informed and believe and thereon allege that defendants immediately reported to the various credit reporting agencies (Equifax, Experien, and TransUnion) that plaintiffs were late on their mortgage payments. Plaintiffs are further informed and believe and thereon allege that defendants, at all times relevant herein, continued to illegally report plaintiffs as being late on their loan.

18. On or about June 2, 2009 plaintiffs received a letter from Defendant FREDDIE MAC congratulating plaintiffs on entering into a loan modification program. Pursuant to the loan modification agreement entered into in June, 2009, plaintiffs began making their payments on July 1, 2009.

19. In or around June 2009, defendants sent a letter to plaintiffs indicating that they were "pre-qualified" for a loan modification.

20. On or about June 23, 2009, defendants sent a letter to plaintiff entitled "Notice of Intent to Foreclose" indicating that plaintiffs were past due in their mortgage in the amount of $100.65 and that plaintiffs need to bring the account current within 30 days to avoid foreclosure proceedings. No Notice of Default accompanied the letter, nor was any Notice of Default ever served on plaintiffs.

21. On or about July 2, 2009, plaintiffs paid the alleged delinquent amount of $100.65. This amount was in addition to the $1,240.00 mortgage amount previously paid on the modified loan agreement.

22. On or about July 7, 2009, plaintiffs received a letter from Defendant FREDDIE MAC indicating that it owned plaintiffs' loan and that CHASE/WASHINTONG MUTUAL

serviced the loan. The letter further noted that CHASE/WASHINGTON MUTUAL had recently notified FREDDIE MAC that plaintiffs were delinquent on their mortgage payments. The letter makes no reference to either a Notice of Default having been filed or an upcoming Trustee Sale.

23. Plaintiffs are informed and believe and thereon allege that defendants recorded a Notice of Default ("NOD") with the Sacramento County Recorder's Office. This NOD was in fact false in that plaintiff were current on their loan obligations. Further, the NOD was in fact never served as is required by California Law.

24. Again on or about September 23, 2009, plaintiffs received a letter from Defendant FREDDIE MAC indicating that it owned plaintiffs' loan and that CHASE/WASHINTONG MUTUAL service the loan. The letter further noted that CHASE/WAMU had recently notified FREDDIE MAC that plaintiffs were delinquent on their mortgage payments. The letter makes no reference to either a Notice of Default having been filed or an upcoming Trustee Sale.

25. On or about October 1, 2009, plaintiffs AGAIN sent all the documents and payment to defendants which defendants requested in order to provide a loan modification.

26. On or about October 2, 2009, plaintiffs received a letter from defendants indicating that their loan modification was at risk for failure of plaintiffs to provide income documentation and various other forms. That letter demanded that plaintiff continue making their loan modification payments and that defendants were granting plaintiff a "one time extension" of time to provide said documentation. No indication was made of how long that extension was for nor was any mention made of an upcoming trustee sale.

27. On or about October 7, 2009 plaintiffs placed a telephone call to defendants demanding to know why they claimed to not have received their loan modification documents, previously requested by defendants. Plaintiffs spoke to a representative of defendants by the name of "Tracy" who indicated that defendants had in fact received all necessary documentation and to disregard the letter of October 2, 2009.

28.  On or about October 16, 2009, plaintiffs received a letter from defendants claiming that their loan modification was in jeopardy because of plaintiffs' failure to provide requested documentation.  This documentation, by now, had been sent numerous times. The statement by defendants in this letter was in fact false in that the documents had already been sent many times previously.  Further, the letter again failed to identify that the home was being foreclosed or that a trustee sale was being held.

29.  Plaintiffs are informed and believe and thereon allege that in or around October, 2009 that defendants conducted a Trustee Sale of the property, that the property in fact did not sell, and that defendants in fact took the property back "REO". Shortly thereafter, unnamed individuals approached plaintiffs at the property indicating that the property had sold at auction, that plaintiffs no longer owned the property and that they (meaning the unnamed persons) were interest in buying the house from the bank.  Plaintiffs immediately contacted defendants at the provided 800 number for customer service and were specifically advised that the house had not foreclosed and that the people who were approaching the property were doing so illegally. Plaintiffs were reassured by this person that the house had not sold and that plaintiffs in fact continued to own the property.

30.  On or about January 31, 2010 defendants sent yet another letter claiming that plaintiffs had failed to provide documentation for a loan modification.  This assertion was in fact false.

31.  On or about February 1, 2010, plaintiffs contacted "Janet" at loss/mitigation for defendants and asked why the property was listed as having foreclosed in October 2009 and deed returned to the bank after Trustee Sale which apparently resulted in their being no purchasers. Janet indicated that this was in fact just a "mistake" on defendants' part and that they simply had not yet "updated" their records.

32.  During that same conversation, plaintiffs asked why defendants continued to accept mortgage payments from plaintiffs if the house had been foreclosed.  Plaintiffs demanded to know where their payments were going and demanded a payment history from defendants. Plaintiffs further demanded to know why defendants' REO department had indicated that plaintiffs no longer owned the house and that it was now in fact owned by the bank. "Janet" again reiterated that this was a mistake and that she would take care of it.  Janet further claimed that she, at that moment, was sending e-mails and correspondence "everywhere" within the company to rectify the situation and to please allow her 10 days to clear up the mess.  The mess, in fact, was never cleaned up.  Janet further promised in that same conversation that someone would review the file and get back to them within 10 days.  No one did.

33.  On or about February 1, 2010 defendants sent another letter to plaintiffs again acknowledging loan modification documentation

34.  On or about February 11, 2010, defendants sent another letter indicating that they were still missing documents from plaintiffs.

35.  At all times relevant herein, plaintiffs made their mortgage payments according to the requests by defendants.  Defendants continued to demand and accept payments even after the property was illegally transferred REO in October 2009.

36.  In or around February 2010, plaintiffs received two separate IRS Forms 1098.  One noted that plaintiffs had paid $5,308.88 in mortgage interest for the 2009 tax year.  The second 1098 noted that the property had been acquired by defendant or abandoned by plaintiff.  The 1098 noted a principle outstanding balance of $339,754.68 and a fair market value at the time of sale of $358,012.76.  This fair market value was in fact false.  Plaintiffs are informed and believe and thereon allege that as of 10/2009, the property in fact had a fair market value of $205,000.00.

/ / /

/ / /

# IV.

## FIRST CAUSE OF ACTION FOR FRAUDULENT INDUCEMENT
## TO BREACH OF CONTRACT

37.  Plaintiffs hereby incorporate paragraphs 1 through 36 of this complaint as if fully set forth herein.

38.  Based upon the allegations noted above, plaintiffs were fraudulently induced to breach the contract with defendants.  .

39.  Plaintiffs relied to their detriment on the statements made by defendants.

40.  Defendants knew or should have known that plaintiffs would rely on the statements made at the time they were made.

41.  By their actions, defendants either intentionally or with reckless disregard, made the statements alleged herein with the intent that plaintiffs rely upon them.

42.  Plaintiffs have suffered general and special damages in an amount to be proven at trial.

43.  As a result of these acts, plaintiff is entitled to punitive damages.

# V.

## SECOND CAUSE OF ACTION FOR VIOLATION OF TILA, 15 U.S.C. § 1601, *et seq.*

44.  Plaintiffs hereby incorporate by reference paragraphs 1 through 43 of this complaint as if fully set forth herein.

45.  Defendants violated TILA at the initial time of purchase by failing to provide plaintiff with accurate and clear and conspicuous material disclosures required under TILA and failing to fully inform plaintiff of the pros and cons of the mortgage presented for final approval, failing to properly disclose the interest rate on the loan, and more. Plaintiffs are informed and believe and thereon allege that the loan documentation, the loan transaction, and the acts of defendants violated various provisions of the Truth in Lending Act.  Plaintiffs are currently

COMPLAINT

-10-

having an audit of their loan documents performed and will amend this complaint further to allege those specific TILA violations once ascertained.

46. Any and all statutes of limitations relating to disclosures and notices for client pursuant to 15 USC 1601 *et seq* were tolled due to the hidden nature of this violation, which did not reveal itself until within the past year.

47. As a direct and proximate result of defendants' violations, plaintiffs have incurred and continue to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

48. Defendants were unjustly enriched at the expense of plaintiffs who are therefore entitled to equitable restitution and disgorgement of profits obtained by defendants.

49. As a result of these violations, plaintiff is entitled to general and special damages according to proof, and any and all further relief that the court may deem appropriate.

## VI.

## THIRD CAUSE OF ACTION FOR FRAUD AND CONSPIRACY TO COMMIT FRAUD

50. Plaintiff incorporates by reference paragraphs 1 through 49 of this complaint as if fully set forth herein.

51. By and through their actions defendants have committed fraud upon plaintiffs and the general public. Plaintiffs are informed and believe and thereon allege that at all times relevant here in, that defendants had no intent of actually providing plaintiffs with a meaningful loan modification.

52. Plaintiffs are informed and believe and thereon alleges that while defendants were leading plaintiffs down a Primrose Path, reassuring them that they were in fact getting a loan modification, defendant were also actively foreclosing on plaintiffs' property.

53. Plaintiffs are informed and believes and thereon allege that defendants conspired with each other to harm plaintiff in the manner alleged above. Each of the defendants herein were aware of the acts of their co-conspirators, agreed with the acts performed, and each intended to help the other to commit wrongful acts.

54. Each of the defendants, prior to doing the acts described above, or concurrent therewith, formulated a common plan for formation and operation of said conspiracy to harm plaintiff.

55. Each of the defendants, in performing the acts described, performed said acts in furtherance of the civil conspiracy which was the legal and proximate cause of damage to plaintiff.

56. As a result of said actions, plaintiff is entitled to general and special damages, and punitive damages.

## VII.

## FOURTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2923.5 *et seq.*/REQUEST FOR DECLARATORY RELIEF

57. Plaintiffs hereby incorporate by reference paragraphs 1 through 56 of this complaint as if fully set forth herein.

58. California law precludes any lender in California to begin foreclosure (i.e. filing a Notice of Default, or requesting the same, hereinafter "NOD") without the lender meeting with and legitimately pursuing options to adjust mortgages of California homeowners. With homeowners that cooperate in speaking with the lenders, the law requires all lenders to file a declaration along with any NOD stating under oath what they did to attempt to adjust the mortgage.

59. Extensive citation to the Legislature's reasoning in Senate Bill 1137 is instructive:

SECTION 1. The legislature finds and declares all of the following:

(a)  California is facing an unprecedented threat to its state economy and local economies because of skyrocketing residential property foreclosure rates in California. . ..
(b)  High foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise. . ..
. . .
(d )  ***It is essential to the economic health of California*** for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by ***modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure.***  These changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided.  Those additional foreclosures will further destabilize the housing market with significant, corresponding deleterious effects on the local and state economy.

60.  California Civil Code section 2923.5 provides in pertinent part

2923.5.  (a) (1) A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g).

  (2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

61.  At no time prior to issuing the NOD did defendants contact plaintiffs in person or by telephone in order to assess his financial situation and explore options to avoid foreclosure. At no

COMPLAINT

time prior to issuing the NOD did defendants advise plaintiffs that they had the right to request a subsequent meeting, nor did they inform him of his right to schedule another meeting within 14 days.

62. At no time prior to issuing the NOD did defendants provide to plaintiffs the toll-free telephone number made available by the United States Department of Housing and Urban Development to find a HUD-certified housing counseling agency.

63. Any certifications contained within the aforementioned NOD claiming compliance with Civil Code section 2923.5 are in fact false. Any certifications contained within the aforementioned NOD claiming any exemptions from the requirements of 2923.5 are in fact false, or were obtained under false pretenses.

64. As a result of the failure to comply with California Civil Code section 2923.5, the NOD issued believed to be issued in or around July 2009 is null and void and any attempts to foreclose on the subject property utilizing California's nonjudicial foreclosure laws, are invalid.

65. As a result of defendants' failure to comply with California Civil Code section 2923.5, plaintiffs are entitled to an order from this court deeming the NOD null and void.

66. Plaintiffs hereby request that the court make legal and factual findings declaring the subject NOD null and void.

67. Plaintiffs are informed and believe and thereon allege that there currently exists an actual controversy as to the validity of the subject NOD and, therefore, the legal validity of any foreclosure proceedings based thereon.

68. As a result of the violation of the statute, plaintiffs have been damaged, both generally and specially, in an amount to be proven at trial.

/ / /

/ / /

/ / /

## VIII.

## FIFTH CAUSE OF ACTION FOR PREDATORY LENDING/VIOLATION OF

## TRUTH IN LENDING

69. Plaintiffs hereby incorporate paragraphs 1 through 68 of this complaint as if fully set forth herein.

70. The office of Comptroller of the currency defines predatory lending as anyone secured by real estate that shares well-known common characteristics that result in unfair and deceptive practices under California business and professions code section 17200.

71. Acts constituting predatory lending in this matter include, but are not limited to, the fact that this loan was marketed in a way that failed to fully disclose all material times. In addition, the loan contains terms that were inherently unfair, fraudulent or unconscionable.

72. The subject loan documents do not plainly and prominently disclose the good faith estimate of closing costs, the site of a yield spread premium paid directly or indirectly, in whole or in part to a mortgage loan officer.

73. Plaintiffs are informed and believe and thereon allege that defendants committed other acts which rise to the level of predatory lending. Plaintiffs will amend their complaint to allege these factual allegations when ascertained.

74. As a direct and proximate result of these actions, plaintiffs have suffered general and special damages in an amount to be proven at trial. Plaintiffs are also entitled to punitive damages based on the acts described herein.

/ / /

/ / /

/ / /

/ / /

/ / /

# IX.

## SIXTH CAUSE OF ACTION

## UNLAWFUL BUSINESS PRACTICES IN VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200.

## PREDICATED ON CALIFORNIA CIVIL CODE SECTION 2923.5

## (BY EACH PLAINTIFF INDIVIDUALLY AND ON BEHALF OF THE GENERAL PUBLIC AGAINST EACH DEFENDANT)

75.  Plaintiffs incorporate by reference paragraphs 1 through 74 of this complaint as if fully set forth herein.

76.  The Unfair Competition Law ("UCL"), codified at Bus. & Prof. Code § 17200 et seq., makes it unlawful for a business to engage in a "business act of practice" that is "unfair" or "unlawful" or "fraudulent."  By virtue of their direct injuries as stated herein, and by virtue of statements identified above in regards to the requirements of California Code of Civil Procedure section 382, plaintiffs, and each of them, have standing to sue and enforce remedies under the UCL.

77.  An "unlawful" business activity includes "anything that can properly be called a business practice and that is at the same time forbidden by law." (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3rd 94, 111.) Prohibited "unlawful" practices are any practices forbidden by law whether civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. (*Farmers Ins. Exchange v. Super. Ct.* (1992) 2 Cal.4th 377, 383.)

78. A business practice is "fraudulent" within the meaning of § 17200 et seq. if members of the public are likely to be deceived by the business practice. (*Bank of the West v. Super. Ct.* (1992) 2 Cal. 4th 1254; *Committee on Children's Television v. General Foods Corp.* (1983) 35 Cal. 3rd 197.)

79. The UCL authorizes injunctive relief to prevent unlawful, unfair, or fraudulent business acts or practices, and both restitution and disgorgement of money or property wrongfully obtained by means of such unfair competition. (*Cal.Bus. & Prof. Code* § 17203.)

80. An action under the UCL may be brought by any person, corporation or association or by any person acting for the interests of itself, its members, or the general public. (*Cal.Bus. & Prof. Code* § 17204.)

81. By failing to comply with the legal prerequisites for foreclosure proceedings, defendants, and each of them, are engaging in unfair business practices such as to justify the relief sought under the UCL.

## X

### SEVENTH CAUSE OF ACTION

### FRAUDULENT BUSINESS PRACTICES IN VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200.

### PREDICATED ON CALIFORNIA CIVIL CODE SECTION 2923.5

### (BY EACH PLAINTIFF INDIVIDUALLY AND ON BEHALF OF THE GENERAL PUBLIC AGAINST EACH DEFENDANT)

82. Plaintiffs incorporate by reference paragraphs 1 through 81 of this complaint as if fully set forth herein.

83. Section 17200 of the California Business and Professions Code provides that "unfair competition shall mean and include any...fraudulent business act or practice."

84. Plaintiffs are informed and believe and thereon allege that defendants continue in their fraudulent business which include but are not limited to:  1) promising homeowners loan modifications that defendants have no intention of actually providing; 2) by routinely issuing NOD's without first complying with the legal requirements of California Civil Code section 2923.5; 3)  by repeatedly demanding documentation from borrowers with full knowledge or in

reckless disregard of the fact that said documentation has already been provided; 4)  by continuing to demand and accept mortgage payments on homes that have in fact foreclosed; 5) by intentionally misleading borrowers into believing that a foreclosure had not occurred or that one had been entered in "error."

## XI

### EIGHTH CAUSE OF ACTION

### VIOLATTION OF THE FAIR CREDIT REPORTING ACT

85. Plaintiffs hereby incorporate by reference paragraphs 1 through 84 of this complaint as if fully set forth herein.

86. Plaintiffs state on information and belief that defendants knew that their foreclosure and related debt collection activities were wrongful and improper.

87.  Defendant willfully and with intent to injure plaintiffs reported to the various reporting agencies (Equifax, Experian and TransUnion) that plaintiffs were delinquent on their loan obligations.  Defendants willfully and/or negligently failed to remove and delete negative credit reporting information on plaintiff's credit report despite such knowledge.

88. As a result, defendants violated the fair credit reporting act 15 USC action 168 and plaintiffs seek all remedies available under said act, including but not limited to the deletion of all negative credit information on plaintiff credit report, monetary damages, or any other such and further relief as the court may deem appropriate.

## XII

### NINTH CAUSE OF ACTION

### DEFAMATION

89. Plaintiffs hereby incorporate by reference paragraphs 1 through 88 of this complaint as if fully set forth herein.

90.  By making the false statements to the credit reporting agencies as noted above, defendants made false allegations which have damaged their credit and have in fact caused injury to their reputation as a result.

91.  At the time that defendants made the statements noted above, they did so with the intent of causing harm to plaintiffs, knowing that the statements were false when made, and made them with the intent to harm plaintiffs.

92.  Defendants made these statements to third persons.

93.  At the time defendants made these statements, they knew or should have known them to be false and reasonably understood that said false statements were additionally negative statements about plaintiffs' honesty, integrity, and creditworthiness.

94.  The persons/entities to whom these statements were made reasonably understood these statements to mean that plaintiffs were high credit risk.  Because of these statements, plaintiffs have suffered damage to their reputation both *per se* and in an actual amount to be determined at trial.

95.  Defendants failed to exercise reasonable care to convey truthful information.

96   As a direct, legal and proximate result of said statements and action plaintiffs have been *per se* damaged.

97.  As a direct, legal and proximate result of said statements and actions, plaintiffs have suffered actual damage to their reputation, property, business, trade and profession as well as shame, mortification and hurt feelings, in an amount to be proven at trial.

98.  In making the above statements, defendants, and each of them acted with actual malice and/or reckless disregard for the consequences of their actions justifying the imposition of exemplary damages.

/ / /

/ / /

/ / /

COMPLAINT

-19-

## XIII.

## TENTH CAUSE OF ACTION

## FALSE LIGHT

99.  Plaintiffs incorporate by reference paragraphs 1 through 98 of this Complaint as if fully set forth herein.

100.  As a direct, legal and proximate result of the actions mentioned above, plaintiffs have been painted in a false light.

101.  Defendants published the aforementioned information to others that showed plaintiffs in a false light.

102.  The false light created by the publication would be highly offensive to a reasonable person in plaintiffs' position.

103.  There is clear and convincing evidence that defendants knew that the publication would create a false impression about plaintiffs and that defendants acted with reckless disregard for the truth.

104.  As a direct, legal and proximate result of said actions plaintiffs have suffered damages including but not limited to: damage to their property, business, profession or occupation.

105.  Defendants' conduct was a substantial factor in causing plaintiffs' harm.

106.  In making the above statements, defendants, and each of them acted with actual malice and/or reckless disregard for the consequences of their actions justifying the imposition of exemplary damages.

## XIV

## ELEVENTH CAUSE OFA CTION

## BREACH OF CONTRACT

107.  Plaintiffs incorporate by reference paragraphs 1 through 106 of this Complaint as if fully set forth herein.

108.  In or around February 2009, plaintiffs and defendants entered into a loan modification contract.

109.   By performing the acts described herein, Defendants continually breached their contractual obligations under the loan modification agreement(s).

110.  As a direct and proximate result of said breach, plaintiffs have suffered general and special damages in an amount according to proof.

## XV.

## III.

## FIRST CAUSE OF ACTION

## (DECLARATORY RELIEF/INJUNCTIVE RELIEF)

111.  Plaintiffs incorporate by reference paragraphs 1 through 110 of this Complaint as if fully incorporated herein.

112.  There currently exists a dispute between the parties as to who the actual owner of the property is.  Plaintiffs claim that they are the true owners and seek judicial declaration from this court to that affect.

113.  Plaintiffs further seek  declaratory relief determining that the NOD issued in or around July 2009 is invalid and void as a result of the failure to comply with California Civil Code sections 2923.5 *et seqi* and various other California statutes related to the service of notices of Default.

114. Injunctive relief is sought insofar as defendants currently have title to the property. In theory, they could file an unlawful detainer action at any time.  Because of the facts stated above, any such unlawful detainer would be unlawful.  Unless enjoined and restrained by order of this court, Defendants' potential actions will cause great and irreparable injury to Plaintiffs.

115.  Plaintiffs have no adequate remedy at law for the injuries suffered as a result of Defendants' behavior as described herein.

/ / /

COMPLAINT

# XVI.

## PRAYER

WHEREFORE plaintiffs pray, both on their own behalves and on behalf of the general public:

1)     That the Court, pursuant to Bus. & Prof. Code §§ 17200, 17203, 17535 *et seq*, preliminarily and permanently enjoin Defendants, and each of them from continuing their fraudulent acts against the public (this will be the subject of a motion later on in this case.)

2)     For an order requiring Defendants, their agents, employees, assigns, and all persons acting in concert or participating with them:

(a) to identify, locate, and repay to each consumer or mortgagee nationwide the full amounts of monies improperly acquired from that consumer, with the Court retaining jurisdiction to supervise Defendants' effort to ensure that all reasonable means are used to comply with the Court's directives;

(b) to disgorge all monies acquired by means of any act found by this Court to be an unlawful or fraudulent business practice under Bus. & Prof. Code § 17200 et seq. and in accordance with applicable law under *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal. 4th 116, *Cortez v. Purolator Air Filtration Products Company* (2000) 23 Cal. 4th 163, Fletcher v. *Security Pacific National Bank* (1979) 23 Cal. 3rd 442, *People v. Thomas Shelton Powers* (1992) 2 Cal. App. 4th 330, and *People ex rel. Smith v. Parkmerced Co.* (1988), 198 Cal. App. 3rd 683;

3)     General damages against each defendant individually and jointly and severally in an amount to be proven at trial and exceeding the sum of $75,000.00;

4)     Special damages against each defendant individually and jointly and severally in an amount to be proven at trial and exceeding the sum of $75,000.00;

5)    For exemplary damages against defendants and each of them, individually and jointly and severally;

6)    For civil penalties under Business & Professions Code section 17206 *et seq.;*

7)    For attorneys' fees and costs as allowable by law;

8)    For Declaratory relief as more specifically identified in paragraphs 111 through 115 of this complaint along;

9)    For pre and post-judgment interest at the rates permitted by law;

10)    For any and all such further relief as may be deemed appropriate.

## XVI

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial in this matter.

Date**: 03/31/10**                    Signature **/s/ Piotr G. Reysner**
Name **Piotr G. Reysner 210937 – attorney for debtors**
Address **Reysner Law Office**
**4110 Truxel Rd., Suite A**
**Sacramento, CA 95834**

COMPLAINT

-23-